FILED
2009 Mar-05  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| COMPASS FINANCIAL CORPORATION AND COMPASS BANK, | ] ] ] ] |
| **Plaintiffs,** | ] ] |
| v. | ]    Case No.:  2:07-CV-1543-VEH |
| | ] |
| MARSHALL INVESTMENTS CORPORATION, et al., | ] ] |
| | ] |
| **Defendants.** | ] |

## <u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

Pending before the Court are two motions.  The fist motion (Doc.86) ((the "Jurisdictional Motion")) challenges this Court's jurisdiction over Third Party Defendant Heinz Sommer ("Sommer").   The second Motion (Doc. 88) (The "Strike/Dismissal Motion") asks the Court to strike the two Third-Party Complaints or, alternatively, dismiss them for failure to state a claim.

For the reasons set out below, the Court will **GRANT** the Jurisdictional Motion and **DENY** the Strike/Dismissal Motion.

## II.   ANALYSIS

### A.   The Jurisdictional Motion

## 1.     Personal Jurisdiction Generally

It is undisputed that Sommer is not a resident of the State of Alabama.  Sommer has asserted, by affidavit, that this Court does not have personal jurisdiction over him. Therefore, the Third Party Plaintiffs have the burden of establishing that personal jurisdiction over Sommer exists.  *See LaSalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp. 2d 1293, 1296 (S.D. Ala. 2003) (citing *Oliver v. Merritt Dredging Co.*, 979 F. 2d 827, 830 (11th Cir. 1992), *cert. denied*, 507 U.S. 983, 113 S. Ct. 1577, 123 L. Ed. 2d. 145 (1993))  .  In *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990), the Eleventh Circuit described the framework for evaluating personal jurisdiction challenges under Rule 12(b)(2) of the Federal Rules of Civil Procedure:

> When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988).  A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Id.*  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.*  Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.*
>
> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990); *Alexander Proudfoot Co.*, 877 F.2d at 919.  First, we consider the jurisdictional question under the state long-arm statute. *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919.  If there is a basis for the assertion of personal jurisdiction

under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Id.* (citations omitted).

The Eleventh Circuit has also described the respective burdens applicable to personal jurisdiction as:

First, the plaintiff must allege sufficient facts in his complaint to initially support long-arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

*Polski Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citations omitted).

Because Alabama's long-arm provision "authorizes the assertion of personal jurisdiction to the limits of the United States Constitution," Third Party Plaintiffs may carry their burden "by demonstrating that personal jurisdiction over [Sommer] meets the requirements of federal due process. Due process requires that [Sommer] have 'certain minimum contacts' with the forum state and, second that the exercise of jurisdiction over [him] does not offend 'traditional notions of fair play and substantial justice.'" *LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

3

A plaintiff can either establish general or specific jurisdiction over the defendant to show personal jurisdiction exists. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (detailing contours of appropriate and inappropriate exercise of personal jurisdiction); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984) (acknowledging distinction made between exercise of "specific" and "general" jurisdiction); *Ex parte Lagrone*, 839 So. 2d 620, 627 (Ala. 2002) ("A nonresident defendant may be subjected to Alabama's *general in personam* jurisdiction if its contacts with this State, <u>although unrelated to the cause of action</u>, are 'continuous and systematic.'") (citing *Helicopteros* and other cases) (emphasis by underlining added). To establish general jurisdiction over a defendant, a plaintiff must demonstrate that the defendant's connection with the forum state is "continuous and systematic." *LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Sherritt*, 216 F.3d at 1292.

To constitute minimum contacts for the purposes of specific jurisdiction:

[A] defendant's contacts with the applicable forum must satisfy three criteria: first, the contacts must be related to the plaintiff's cause of action or have given rise to it; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and third, the contacts must be such that the defendant should reasonably anticipate being haled into court in the forum.

*LaSalle Bank*, 274 F. Supp. 2d at 1297; *see also Sherritt*, 216 F.3d at 1291.

### 2.    Application

Because of Sommer's lack of any continuous or systematic contacts with the State of Alabama, the parties are in agreement that the jurisdictional inquiry turns upon an analysis of specific jurisdiction.

### 1.    Conspiracy-Based   Jurisdiction Under Alabama Law

Specifically, Third Party Plaintiffs seek to impose specific *in personam* jurisdiction on Sommer on the basis of conspiracy.   "Under the so[-]called 'conspiracy theory of jurisdiction,' personal jurisdiction can be exercised over a defendant who lacks minimum contacts to the forum state in the traditional sense <u>if a substantial connection exists between that forum and a conspiracy entered into by that defendant</u>." *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1066 (S.D. Ala. 2007) (citation omitted) (emphasis added).

Regarding the conspiracy theory of personal jurisdiction, the Supreme Court of Alabama has explained:

> <u>None of these affidavits deny the existence of a conspiracy, or the affiant's participation therein</u>.  The affidavits are addressed, instead, to more conventional bases of jurisdiction, such as those embodied in the "laundry-list" provisions of Rule 4.2 before its 2004 amendment. However, the fact that a jurisdictional basis is not found within the laundry list "does not prevent a threshold finding of jurisdiction under the conspiracy theory," pursuant to Rule 4.2(b). *McLaughlin v. Copeland*, 435 F. Supp. 513, 532 (D. Md. 1977).

The petitioners concede, as they must, that the defendant must "make [ ] a *prima facie* evidentiary showing that the court has no personal jurisdiction [before] 'the plaintiff is . . . required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof.' " Petition, at 12-13 (emphasis added). Our cases say as much. *See Ex parte United Ins. Cos.*, 936 So.2d at 1053 (" ' "[I]f the defendant makes a *prima facie* evidentiary showing that the Court has no personal jurisdiction, 'the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof....' " ' "); *Bufkin*, 936 So. 2d at 1045 (" 'However, if the defendant makes a *prima facie* evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof. . . ." ' ").

To be sure, the conspiracy averments in the complaint must exceed "bald speculation" and mere conclusory assertions. *Ex parte McInnis*, 820 So.2d at 806-07. However, this burden is not heavy, especially "[w]hen determination of the jurisdictional facts is intertwined with and may be dispositive of questions of ultimate liability." *McLaughlin v. Copeland*, 435 F. Supp. at 530. This is so, because "[t]o require a more substantial showing in a case alleging a civil conspiracy would be . . . 'harsh, if not impossible' in view of the difficulties of pleading and proving a conspiracy." *Id.* (quoting *Mandelkorn v. Patrick*, 359 F. Supp. 692, 696 (D.D.C. 1973)).

Moreover, until "controverted by the defendant's affidavits," the plaintiff's jurisdictional allegations must be considered as true. *Wenger Tree Serv. v. Royal Truck & Equip., Inc.*, 853 So.2d 888, 894 (Ala.2002)(emphasis added). Thus, where the complaint alleges conspiracy-based jurisdiction with particularity, failure to deny by affidavit or deposition the existence of, or participation in, a conspiracy will result in a denial of a motion to dismiss for lack of jurisdiction. *See McLaughlin, supra*; *Mandelkorn, supra*. AHAT's complaint meets the specificity threshold.

*Ex parte Reindel*, 963 So.2d 614, 623-24 (Ala. 2007) (emphases added).

Third Party Plaintiffs contend that, similar to the situation in *Reindel*, the allegations of conspiracy are sufficiently particularized or at least colorably stated such that Sommer was required to refute those allegations with contrary evidence and that his failure to do so is fatal to his Jurisdictional Motion. *Id.* at 622 ("We denied the [defendant's] petition, concluding that Roberts had " 'at least *alleg[ed] facts* that would support a *colorable claim* of jurisdiction,' " 936 So.2d at 1047, and was, therefore, entitled to discovery on the jurisdictional issue.") (quoting *Ex parte Bufkin*, 936 So. 2d 1042 (Ala. 2006)); *see also Ex parte Barton*, 976 So. 2d 438, 447 (Ala. 2007) ("Instead, his [*i.e.*, the defendant's] evidence is similar to that produced by the defendant in *Puccio*-generic evidence that he had no contact with Alabama that does not address the factual assertions in the complaint demonstrating sufficient contacts with this state.").

However, the *Reindel* rule is not triggered unless "the plaintiff 'plead[s] with particularity the conspiracy <u>as well as the overt acts within the forum taken in furtherance of the conspiracy</u>.'" *Matthews*, 469 F. Supp. 2d at 1066 (quoting *Ex parte McInnis*, 820 So. 2d 795, 806-07 (Ala. 2001) (emphasis added) (footnote omitted)). Here, Third Party Plaintiffs have not sufficiently "allege[d] that [their] conspiracy claims against [Third Party Defendants, including Sommer] rest on any overt acts in the State of Alabama" and, <u>as pleaded</u>, their "conspiracy claim does not hinge on

anything that any [specific Third Party D]efendant did or may have done in Alabama." *Matthews*, 469 F. Supp. 2d at 1067.

The third party complaint filed by CIT asserts:

> This Court has personal jurisdiction over defendant Heinz Sommer by virtue of his serving, at all relevant times, as the President of Krones. Upon information and belief, Sommer was aware of, consented to and participated in the activities of Krones described herein. Sommer was a knowing and active participant in the scheme to defraud financial institutions, as described more fully herein, which scheme intentionally targeted financial institutions in Alabama, including Compass Bank.

> Krones and Sommer conspired with Le-Nature's and its CEO, made misrepresentations and failed to disclose and suppressed material facts about, among other things, the true purchase price of the bottling equipment and the condition of Le-Nature's, including its current and projected operating capabilities, its sales levels, and its management.

> As a result of third-party defendants' fraudulent scheme, CIT, the participants and the sub-participants in the Le-Nature's transaction, including Compass Bank, lost significant sums of money, including the sums which Compass Bank seeks to recover from CIT in this action.

> The affirmative acts taken by the third-party defendants, included, among other things: (i) making false and misleading statements to CIT regarding the purchase price for the bottling equipment; (ii) providing fictitious documents reflecting the inflated purchase price for the bottling equipment; (iii) telling CIT that funds paid to Krones for the purchase of bottling equipment had not been funneled over to Le-Nature's when they had; (iv) confirming as accurate invoices for bottling equipment that were in fact fictitious; and (v) making false and misleading statements intended to conceal the true facts from CIT.

> Thus, on or about March 18, 2005, Sommer attended a meeting at CIT's offices with Carl Myrick and Charlie Lee, both employees of CIT,

in which he was informed that CIT was attempting to verify the correct price for the equipment being charged by Krones. Sommer was shown equipment pricing documents that reflected a price other than the one represented to CIT by Krones and Le-Nature's. <u>Sommer falsely stated that the documents were not related to the equipment CIT was to purchase from Krones and failed to disclose the true purchase price of the equipment when asked</u>.

On or about March 22, 2005, CIT received a specification sheet identifying each piece of bottling equipment for one of the production lines, which showed a total cost of approximately $46.1 Million. <u>The last page of the specification sheet was signed on behalf of Krones by Sommer and Pat Carroll</u>. <u>The costs represented on the specifications sheet were intended to convince CIT that it was not being defrauded, when in fact the figures were fictitious</u>.

<u>On or about March 24, 2005, Sommer knowingly falsely confirmed in a telephone conversation with Roy Keller, then President of CIT, that, among other things, the total purchase price for all four lines of the bottling equipment being purchased was $185 million. Sommer also stated that Krones had received an $11.5 million down payment from Le-Nature's and had not paid any funds received for the bottling equipment back to Le-Nature's</u>. In truth, Krones had in fact repaid to Le-Nature's approximately $5 million of the $11.5 million down payment.

(Doc. 49 ¶¶ 6, 10, 13, 15, 17, 19-20 (emphases added)).[1]

None of the above allegations, with the exception of one, references <u>any</u> connection to Alabama. Thus, any tie between Third Party Defendants' conspiratorial activities and this district is less than obvious from the face of the third party

---

[1] MIC's third party complaint contains comparable allegations. (*See generally* Doc. 52).

pleadings.

Moreover, the sole Alabama reference conclusively (and ineffectively) states that "Sommer was a knowing and active participant in the scheme to defraud financial institutions, as described more fully herein, which scheme intentionally targeted financial institutions in Alabama, including Compass Bank."  Further, to the extent that this particular type of allegation could satisfy Alabama's overt act requirement, Sommer has, by affidavit, specifically denied any such knowledge of a jurisdictional impact by swearing that he "never intentionally targeted any activities towards the State of Alabama in connection with or relating to the subject matter of this action[;]" and that he "was not aware that CIT was syndicating part of the transaction to Compass or to any other financial institution in Alabama."  (Doc. 90 at Ex. 1 ¶¶ 14, 18); *see also id.* ¶ 10 ("I have never intentionally targeted any business activities towards the State of Alabama"); *id.* ¶ 15 ("I have never engaged in any activities in which I foresaw effects inside the State of Alabama in connection with or relating to the subject matter of this action"); *id.* ¶ 17 ("I have not engaged in any personal solicitation or service activity in Alabama, nor has anyone else done so on my behalf in connection with or relating to the subject matter of this action.").  Third Party Plaintiffs have not effectively refuted this sworn testimony offered in support of

Sommer's Jurisdictional Motion.[2]

In response to Sommer's challenge that the over act element is lacking, Third

Party Plaintiff CIT responds in part that:

> The Third Party Complaint also pleads the necessary overt acts
> directed at Alabama.  Co-conspirator Le-Nature's directly interacted
> with Compass as part of the solicitation effort.  In fact, Compass visited
> Le-Nature's headquarters and toured Le-Nature's Pennsylvania facilities
> in order to gain a comfort level before agreeing to participate in the Le-
> Nature's Transaction.  (Amended Compl. at ¶ 67).  These actions on the
> part of Le-Nature's to solicit Compass were part of the conspiracy and
> can be attributed to Sommer for personal jurisdiction purposes. *Ex parte
> Barton*, 976 So. 2d at 445-447 (out of forum acts "aimed at" harming a
> victim in Alabama and thus committed overt acts within the forum for
> jurisdictional purposes.).

(Doc. 108 at 12).

This statement insufficiently establishes the overt act requirement for several

reasons.  First, Third Party Plaintiffs rely upon allegations made by <u>Plaintiffs in their</u>

<u>amended complaint</u>; however, the operative documents to rely upon for the

jurisdictional assessment are rather the third party complaints because those are the

pleadings which add Sommer to the litigation.

---

[2] For example (and regardless of its authenticity), the Bill of Sale, Assignment and Agreement relating to Third Party Plaintiff CIT and Pitney Bowes Credit Corporation (Doc. 108 at Ex. A) does not establish any conspiratorial impact targeted toward the State of Alabama or otherwise rebut Sommer's sworn testimony that he lacked any intent or awareness about any effect that his activities had <u>in this particular forum</u>.

Second, even if it were appropriate to use allegations from Plaintiffs' amended complaint, which did not mention either of the Third Party Defendants, to show some type of jurisdictional nexus between Sommer and Alabama, this particular reference discusses <u>Compass's travel to Latrobe, Pennsylvania to visit Le-Nature's headquarters</u>.   (Doc. 41 ¶ 67).   Therefore, such an allegation provides <u>no</u> jurisdictional link between actions by Sommer and this forum.

Third, while Third Party Plaintiffs cite to *Barton* as supporting authority, because the allegations there included harm to Alabama plaintiffs by "a partnership operating in Alabama[,]" the overt act assertions in that case were significantly more developed.  976 So. 2d at 445("The 'thrust' of their [*i.e.*, the plaintiffs'] allegations is that Barton conspired with the other defendants to misrepresent facts and to suppress information to the plaintiffs in Alabama regarding a partnership operating in Alabama.").  More specifically, in *Barton*:

> [T]he plaintiffs allege that the defendants together conspired to make certain misrepresentations, through Shannon, to convince the plaintiffs to allow Greenway and KMJ into Gulf Development as partners even though new partners were unnecessary. Barton, who the plaintiffs alleged owned and operated KMJ, personally guaranteed the loan with the bank even though the plaintiffs' own creditworthiness was sufficient. The plaintiffs argue that they are Alabama residents and that Gulf Development, though registered in Florida, operates in Alabama.  <u>The plaintiffs thus contend that Barton acted in such a manner that he should have anticipated direct consequences for the plaintiffs in Alabama and that Barton's allegedly intentional and tortious actions were "expressly aimed" at Alabama and Alabama residents.</u>

976 So. 2d at 445 (emphasis added).   Therefore, *Barton* is significantly distinguishable and does not help Third Party Plaintiffs' jurisdictional cause.[3]

## 2.   Federal Due Process Considerations

Alternatively and independently, even if Third Party Plaintiffs have adequately met their procedural requirements under Alabama conspiracy-based jurisdictional law (which the court expressly concludes they have not), Sommer's Jurisdictional Motion is still due to be granted under federal due process grounds.

The court's minimum contacts <u>and</u> fair play and substantial justice assessments are guided by the Eleventh Circuit's discussion in *Madara, supra*.

As explained in *Madara*:

> Where a forum seeks to assert specific personal jurisdiction over

---

[3]   The other authorities relied upon by Third Party Plaintiffs are similarly inapplicable, distinguishable and/or unpersuasive.  For example, Third Party Plaintiff MIC relies heavily upon *Calder v. Jones*, 465 U.S. 783 (1984) and subsequent citing cases in an effort to establish personal jurisdiction.  (Doc. 109 at 11-15).  However, *Calder* involved a <u>resident plaintiff</u> seeking to maintain jurisdiction over nonresident defendants whose charged conduct rose to a level beyond that of "mere untargeted negligence[.]"  465 U.S. at 789; *id.* at 789-90 ("[T]hey knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation."); *id.* at 790 ("In this case, petitioners are <u>primary participants in an alleged wrongdoing intentionally directed at a California resident</u>, and jurisdiction over them is proper on that basis.") (emphasis added).  Here, Third Party Plaintiffs are not Alabama residents.  *See infra* n.6.  Additionally, unlike *Calder*, the totality of the third party allegations does not establish actions "expressly aimed at [Alabama]."  465 U.S. at 789.  Accordingly, the court disagrees with MIC that the principles of *Calder* and its progeny apply.

a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985); *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977) (Stevens, J. concurring in judgment). This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, *Keeton*, 465 U.S. at 774, 104 S. Ct. at 1473, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 18 68, 1872, 80 L. Ed. 2d 404 (1984)).

Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474, 105 S. Ct. at 2183; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980). However,

> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L. Ed. 2d 1283, *reh'g denied*, 358 U.S. 858, 79 S. Ct. 10, 3 L. Ed. 2d 92 (1958). This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, *Burger King*, 471 U.S. at 475, 105 S .Ct. at 2183; *Keeton*, 465 U.S. at 774, 104 S. Ct. at 1478, or because of the unilateral activity of a third person. *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183; *Helicopteros*, 466 U.S. at 417, 104 S. Ct. at 1873. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a "substantial connection" with the forum state. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting

14

> *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199,
> 201, 2 L. Ed. 2d 223 (1957)). Although the concept of foreseeability is
> not irrelevant to this analysis, the kind of foreseeability critical to the
> proper exercise of personal jurisdiction is not the ability to see that the
> acts of third persons may affect the forum, but rather that <u>the defendant's
> own purposeful acts will have some effect in the forum</u>. *See Asahi
> Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026,
> 1032-33, 94 L. Ed. 2d 92 (1987).

*Madara*, 916 F.2d at 1516-17 (emphasis added) (footnote omitted).

The *Madara* court then further clarified regarding fair play and substantial

justice that:

> Once it has been determined that the nonresident defendant has
> purposefully established minimum contacts with the forum such that he
> should reasonably anticipate being haled into court there, these contacts
> are considered in light of other factors to decide whether the assertion
> of personal jurisdiction would comport with "fair play and substantial
> justice." *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (quoting
> *International Shoe Co.*, 326 U.S. at 320, 66 S. Ct. at 160).  These other
> factors are the burden on the defendant in defending the lawsuit, the
> forum state's interest in adjudicating the dispute, the plaintiff's interest
> in obtaining convenient and effective relief, the interstate judicial
> system's interest in obtaining the most efficient resolution of
> controversies and the shared interest of the states in furthering
> fundamental substantive social policies. *Burger King*, 471 U.S. at 477,
> 105 S. Ct. at 2184; *World-Wide Volkswagen*, 444 U.S. at 292, 100 S. Ct.
> at 564.  <u>Minimum requirements of "fair play and substantial justice"
> may defeat the reasonableness of asserting personal jurisdiction even if
> the defendant has purposefully engaged in forum activities.</u> *Burger
> King*, 471 U.S. at 477-78, 105 S. Ct. at 2185.  Conversely, these
> considerations may serve to establish the reasonableness of jurisdiction
> upon a lesser showing of minimum contacts than would otherwise be
> required. *Id.* at 477, 105 S. Ct. at 2184.

*Madara*, 916 F.2d at 1517 (emphasis added).

15

Here, this court struggles to see how either the minimum contacts criteria or the fair play and substantial justice requirements are met regarding Third Party Plaintiffs' efforts to litigate indemnity and contribution claims against Sommer in Alabama. More specifically, the record before the court lacks sufficient allegations and/or evidence of any purposeful activities on the part of Sommer (or Krones as potential co-conspirator) directed towards the State of Alabama. In the absence of some example of purposeful availment, Sommer is without fair warning that his activities might subject him to jurisdiction in Alabama.

The record further fails to support a tangible link between Sommer's purported misconduct and the State of Alabama such that he could reasonably expect to be haled into court here. Instead, the connection to the State of Alabama that Third Party Plaintiffs really seem to draw upon relate to <u>their</u> own challenged actions that allegedly caused injuries to <u>Plaintiffs</u> in Alabama. While Third Party Plaintiff CIT suggests in its briefing that a master plan to defraud financial institutions on a nationwide basis exists in this case in which Sommer and/or Krones somehow played a role, neither the allegations in the third party complaints nor the jurisdictional evidence supports such a nationwide theory of jurisdiction. (*See, e.g.*, Doc. 108 at 14). In sum, the record reveals at best only an attenuated connection between Sommer's actions and Alabama, <u>and certainly not a substantial one</u>, which due

process demands.

Finally, even assuming the satisfaction of minimum contacts criteria, the court would still reject the exercise of personal jurisdiction over Sommer on fair play and substantial justice grounds.   In particular, Alabama's interest in adjudicating piecemeal contribution/indemnity claims of <u>nonresident</u> Third Party Plaintiffs,[4] especially when another lawsuit is pending in the United States District Court for the District of Arizona filed by Third Party Plaintiff CIT stemming from the same type of alleged misconduct against both Third Party Defendants (and others) (*see generally* Doc. 90 at Ex. 2 at Ex. A), is weak at best, while the burden on Sommer in having to simultaneously defend both actions, even acknowledging modern advances in technology and transportation,[5] in distant jurisdictions is substantial.   Accordingly, for all these reasons, the Jurisdictional Motion is due to be granted, and Sommer is due to dismissed as a party for lack of *in personam* jurisdiction.[6]

---

[4] CIT is a citizen of Arizona and Delaware.  (Doc. 1 ¶ 14).  MIC is a citizen of Minnesota and Delaware.  (*Id.* ¶ 12).

[5] *See, e.g., Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 393 (11th Cir. 1988) ("Although the defendants would be compelled to travel to Florida to defend this lawsuit, modern improvements in transportation and communication significantly lessen this hardship.") (citation omitted).

[6] Relatedly, the court rejects Third Party Plaintiff CIT's request for permission to conduct jurisdictional-related discovery.  (Doc. 108 at 16-18).  In particular, the court notes that (1) no motion has been filed, *United Technologies Corp. v. Mazer*, ___ F.3d ___, Nos. 06-15561, 06-15562, 2009 WL 263329, (11th Cir. Feb. 5, 2009)

**B.      The Strike/Dismissal Motion**

**1.      Rule 14**

Third Party Plaintiffs bring claims against Third Party Defendants for equitable indemnity or contribution pursuant to Rule 14 of the Federal Rules of Civil Procedure.  Rule 14 provides in pertinent part:

**(a) When a Defending Party May Bring in a Third Party.**

> **(1) *Timing of the Summons and Complaint.*  A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 10 days after serving its original answer.**

―――――――――――――

("However, UTC never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs as a proposed alternative to dismissing APM on the state of the current record."), (2) a stay of deposition discovery is already in place in this case at the insistence of all third parties and no party has sought to lift that stay, (3) Third Party Plaintiff MIC does not appear to join in this request, and (4) such a qualified right to conduct jurisdictional discovery is not warranted in this instance.  *See, e.g., Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.7 ("Although Plaintiffs correctly cite precedent from this court, as well as from the state of Florida, in support of a qualified right to conduct jurisdictional discovery, those cases are distinguishable.") (emphasis added) (citations omitted).  This lawsuit does not involve a situation in which no discovery has taken place.  Moreover, Third Party Plaintiff CIT has not pointed to any particular outstanding or even potential discovery directed to Third Party Defendants and explained how such information might prove pivotal to this court's jurisdictional inquiry.  Accordingly, under all these circumstances, the court in its discretion denies Third Party Plaintiff CIT's generalized plea for jurisdictional discovery.

18

. . .

>    **(4)** *Motion to Strike, Sever, or Try Separately.*  Any party
>    may move to strike the third-party claim, to sever it, or to
>    try it separately.

Fed. R. Civ. P. 14(a)(1), (4).

Third Party Defendant Krones[7] argues unconvincingly that Third Party Plaintiffs' claims for indemnity or contribution are not derivative and therefore are due to be struck under Rule 14(a)(4).  The court disagrees.  Not only are claims of indemnity and contribution quintessentially derivative in nature, but also the case law cited by Krones in support of its motion confirms this commonplace principle of Alabama law.

As reasoned by the district court in *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 187 F.R.D. 671 (M.D. Ala. 1999):

>    Contending that impleader would avoid duplicative litigation does
>    not relieve the Third-Party Plaintiffs of the essential requirements of
>    Rule 14.  HCB and Cole have not asserted any right to contribution or
>    indemnification in their Amended Complaint. They do not assert
>    derivative liability on the part of the Third-Party Defendants. In their
>    Response in Opposition to Jenkins' Motion, the Third-Party Plaintiffs
>    vigorously assert that **they are not seeking contribution or
>    indemnification**.  *See* Defendants/Third-Party Plaintiffs Response in
>    Opposition (File Doc. 36) at 4-5.  The Third-Party Plaintiffs state, "Cole

---

[7] Because of the court's personal jurisdiction determination relating to Third Party Defendant Sommer, only Third Party Defendant Krones remains as a movant on the Strike/Dismissal Motion.

has not sought contribution from Jenkins. Rather, Cole has asserted claims against Jenkins which arise out of the same transaction or circumstances giving rise to the Plaintiff's claim against Cole." *Id.* at 5. As noted above, the transactional test does not apply to claims brought under Rule 14.

<u>Because the Third-Party Plaintiffs attempt to assert separate and independent claims and do not assert derivative liability on the part of the Third-Party Defendants, they cannot bring their claims against the subcontractors in the present action under Rule 14(a).</u>  Accordingly, Jenkins' Motion to Strike the Third-Party Complaint is due to be granted.  For the same reason, the claims against Third-Party Defendant Coston are due to be dismissed.

187 F.R.D. at 674.

Third Party Defendant Krones fails to even acknowledge, much less discuss, this on-point analysis in *Allstate*, despite citing to the decision for a separate proposition.  (Doc. 89 at 6).

In any event, Third Party Defendant Krones is simply wrong in its contention, and its cases, to the extent they can even be construed to show support, are distinguishable and/or unpersuasive.   Accordingly, the Rule 14 portion of the Strike/Dismissal Motion is due to be denied.

## 2.    Rule 12(b)(6)

Alternatively, Third Party Defendant Krones maintains that any claims of contribution or indemnity are due to be dismissed for failure to state a claim under Rule 12(b)(6).  A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.

*See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 1969.  In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

The court is persuaded that Third Party Plaintiffs have met the Rule 12(b)(6) standard in pleading their contribution and indemnity claims.  More particularly, Third Party Plaintiffs have sufficiently pled their claims around the general rule of no right to indemnification or contribution between joint tortfeasors by alleging that, to the extent they are liable, that liability stems from their passive (as opposed to active) negligent conduct.  *See, e.g., Crigler v. Salac*, 438 So. 2d 1375, 1385 (Ala. 1983)

21

("Some exceptions to the rule that indemnity will not be allowed among joint wrongdoers are that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the proximate or primary cause of the injury.") (citations omitted); *Coates v. CTB, Inc.*, 173 F. Supp. 2d 1200, 1203 (M.D. Ala. 2001) ("This exception is 'that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the efficient cause of the injury. Where an injury results from a violation of a duty which one owes to another, the parties are not in pari delicto.'") (citations omitted).

Whether Third Party Plaintiffs will ultimately be able to sustain such a claim from an evidentiary standpoint is not for the court to decide at this juncture. *See, e.g., Coates*, 173 F. Supp. 2d at 1203 n.2 ("This requirement means that Latco [*i.e.*, Third Party Plaintiffs] will *not* be able to recover from ITW [*i.e.*, Third Party Defendant Krones] if the evidence reveals that Latco was *actively* negligent in the construction of the chicken houses, at least with respect to the use of the nails and nail guns. . . . However, because Rule 14 requires simply that the party impleaded *may* be liable for contribution, ITW is properly included in this case.") (emphasis by underlining

added).  Therefore, the Rule 12(b)(6) portion of the Strike/Dismissal Motion is also due to be denied.

## III.   CONCLUSION

Accordingly, for the reasons explained above, the Jurisdictional Motion is due to be granted in favor of Third Party Defendant Sommer[8] and the Strike/Dismissal Motion is due to be denied as to remaining Third Party Defendant Krones.  The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 5th day of March, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[8] The dismissal of Sommer will be without prejudice.  *See Posner*, 178 F.3d at 1221 ("The district court erred when it dismissed claims against Salem with prejudice on jurisdictional grounds; we affirm the dismissal of those counts for which it lacked personal jurisdiction but instruct the district court to dismiss those claims without prejudice.").